No. 22-11024-AA

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

Talal Qais Abdulmunem Al Zawawi,

*Appellant*,

v.

Colin Diss, et al,

*Appellees*.

Appeal from the United States District Court
for the Middle District of Florida

District Court Case No.: 6:21-cv-00894-GAP
Bankruptcy Court Case No.: 6:21-bk-01251-LVV

---

## APPELLANT'S OPENING BRIEF

---

NICHOLAS A. SHANNIN, B.C.S
Florida Bar No.: 0009570
Email: service@shanninlaw.com
　　　nshannin@shanninlaw.com
Shannin Law Firm, P.A.
214 South Lucerne Circle East
Suite 200
Orlando, Florida 32801
Telephone: 407.985.2222

KENNETH D. HERRON JR.
Florida Bar No. 699403
Herron Hill Law Group, PLLC
P. O. Box 2127
Orlando, Florida 32802
Phone: 407.648.0058
Email: chip@herronhilllaw.com

*Counsel for Appellant, Talal Qais Abdulmunem Al Zawawi*

<u>No. 22-11024-AA</u>

<u>Talal Qais Abdulmunem Al Zawawi  v. Colin Diss, et al</u>

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE <u>DISCLOSURE STATEMENT</u>**

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellant, Talal Qais Abdulmunem Al Zawawi, provides the following Certificate of Interested Persons and Corporate Disclosure, which includes a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

"In bankruptcy appeals, the CIP must also identify each debtor, the members of the creditor's committee, any entity which is an active participant in the proceedings, and other entities whose stock or equity value may be substantially affected by the outcome of the proceedings." 11th Cir. R. 26.1-2(a).

## I.    CORPORATE DISCLOSURE.

There are no nongovernmental corporations that are parties to this proceeding.

## II.    INTERESTED PERSONS.

1.    Al Zawawi, Talal Qais Abdulmunem, *Appellant, Foreign Debtor*

1

2.    Blanco, Leyza F., *Attorney for the Appellees and Foreign Representatives in the underlying Chapter 15 Bankruptcy Case*

3.    Davie, Hannah, *Appellee and Foreign Representative in the underlying Chapter 15 Bankruptcy Case*

4.    Diss, Colin, *Appellee and Foreign Representative in the underlying Chapter 15 Bankruptcy Case*

5.    Edwards, Ted, *Attorney for the discovery targets*

6.    Hawthorne Groves Apartments, Inc., *a discovery target*

7.    Hawthorne Landing, Inc., *a discovery target*

8.    Hawthorne Village at Port Orange, Inc., *a discovery target*

9.    Herron, Kenneth Dr., Jr., *Attorney for Appellant/Foreign Debtor and the discovery targets*

10.   Herron Hill Law Group, PLLC, *Attorneys for Appellant and the discovery targets*

11.   Law Office of Ted Edwards, P.A.. *Attorney for the discovery targets and a discovery target*

12.   Mackinnon, Alexander C., *a discovery target*

13.   Mendoza, Juan J., *Attorney for the Appellees and Foreign Representatives in the underlying Chapter 15 Bankruptcy Case*

14.   Presnell, Honorable Gregory A., *United States District Judge*

15.    Qapa Holdings, Inc., *a discovery target*

16.    Qapa Investing Company U.S.A., Inc., *a discovery target*

17.    Rajasekhar, Kandoth Unnikrishnan*, a discovery target*

18.    Sequor Law, *Attorneys for the Appellees/Foreign Representatives in the underlying Chapter 15 Bankruptcy Case*

19.    Shannin, Nicholas A., *Attorney for Appellant*

20.    Shannin Law Firm, P.A., *Attorneys for Appellant*

21.    Texas Q Zone, Inc., *a discovery target*

22.    Vaughn, Honorable Lori V., *United States Bankruptcy Judge*

### III.    BANKRUPCY DISCLOSURES.

23.    Debtor:  Al Zawawi, Talal Qais Abdulmunem, is identified above as the Foreign Debtor and putative debtor in the underlying Chapter 15 bankruptcy case.

24.    Members of the creditor's committee:  <u>None</u>.

25.    Active participants in the bankruptcy case, and other entities whose stock or equity value may be substantially affected by the outcome of the proceedings:  <u>None</u>.

### IV.    CERTIFICATION PURSUANT TO RULE 26.1-3(b).

I hereby certify, pursuant to 11th Circuit Rule 26-1.3(b) that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

I hereby further certify, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the district judge and bankruptcy judge assigned to this case, and will immediately notify the Court in writing upon learning of any such conflict.

## **DISCLOSURE STATEMENT PURSUANT TO FRAP 26.1(c)**

Appellant states that there are no debtors not named in the caption, that Mr. Zawawi is the only debtor involved in this appeal, and that there are no debtors that are a corporation.

## **CORPORATE DISCLOSURE STATEMENT**

To the best of Appellant's knowledge, no party to this appeal is owned by a publicly held corporation or other parent corporation that owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

This is a case that is worthy of oral argument: it presents a novel issue of first impression for this Court and has the potential to impact not only bankruptcy courts throughout the federal system, but parties and practitioners internationally. Notwithstanding the importance of the issues raised for this Court's determination, the determination is, at its core, a pure issue of law that does not require oral argument for resolution. To the contrary, Appellant urges that a straightforward and plain language reading of the applicable bankruptcy code provisions dictate the resolution of this matter, an outcome that argument cannot alter. Accordingly, while the matter is one of great importance meriting full de novo review by this tribunal, it is the opinion of the Appellant that oral argument is not required for a swift and proper reversal to occur.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ......................................... 5

TABLE OF CITATIONS .................................................. 8

JURISDICTIONAL STATEMENT ................................................. 11

STATEMENT OF THE ISSUES ..................................................... 13

STATEMENT OF THE CASE ......................................................... 14

    A.    Introduction ..................................................... 14

    B.    Course of the Proceedings Below regarding application of Bankruptcy Code § 109(a) to a Chapter 15 Proceeding................ 14

    C.    Course of the Proceedings Below regarding the Merits of a Bankruptcy Code § 109(a) review ................................... 15

    D.    Hearing, Final Orders, and Appeals ............................. 17

SUMMARY OF ARGUMENT ........................................................ 19

ARGUMENT .............................................................. 21

    STANDARD OF REVIEW ..................................................... 21

I.THE PLAIN LANGUAGE OF BANKRUPTCY CODE § 103(a) REQUIRES SECTION 109(A) TO APPLY IN CHAPTER 15 PROCEEDINGS................ 21

II.THE DEBTOR HAS NO PROPERTY IN THE UNITED STATES, SO RECOGNITION SHOULD NOT BE GRANTED PURSUANT TO § 109(a) OF THE BANKRUPTCY CODE.......................................................... 29

A.    The Debtor has No Interest in Florida Entities ............................ 32

B.    The Debtor Does Not Own Texas Q Zone, Inc. or any Chose in
        Action or Cause of Action Arising Therefrom ............................ 36

C.    The Foreign Representatives' Attempts to Manufacture a Sham
        Property Interest for Purposes of § 109(a) Should be Rejected.... 37

CONCLUSION ................................................................................. 40

CERTIFICATE OF COMPLIANCE................................................................. 40

CERTIFICATE OF SERVICE ......................................................................... 41

# <u>TABLE OF CITATIONS</u>

## <u>Federal Cases</u>

11 U.S.C. § 1521 ................................................................................. 39

*Barben v. Donovan (In re Donovan)*,
    532 F.3d 1134 (11th Cir. 2008) .............................................. 11

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002)................................................................ 22

*Beltran v. Miraglia,*
    125 So. 3d 855 (Fla. 4th DCA 2013)................................. 33, 35

*Bostock v. Clayton Cty.*,
    140 S. Ct. 1731 (2020)..................................................... passim

*Butner v. United States*,
    440 U.S. 48, 99 S. Ct. 914 (1979) ......................................... 32

*Carcieri v. Salazar*,
    555 U. S. 379, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) .... 28

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992)........................................................ 22, 28

*Flynn v. Wallace (In re Irish Bank Resolution Corp. (In Special Liquidation))*,
    538 B.R. 692 (D. Del. 2015).................................................. 36

*Gasparini v. Pordomingo,*
    972 So. 2d 1053 (Fla. 3d DCA 2008)..................................... 33

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)................................................................ 22

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) .................................................. 23

*In re Head*,
    223 B.R. 648 (Bankr. W.D.N.Y. 1998)............................ 31, 38

*In re Howard*,
    972 F.2d 639 (5th Cir. 1992) ................................................................... 24

*In re Manley Toys Ltd.*,
    No. 16-15374 (JNP), 2018 Bankr. LEXIS 504 (Bankr. D.N.J. Feb. 23,
    2018) ................................................................................................ 31, 37

*In re PT Bakrie Telecom TBK*,
    601 B.R. 707 (Bankr. S.D.N.Y. 2019) .................................................... 30

*In re Transbrasil S.A. Linhas Aereas*,
    860 Fed. Appx. 163 (11th Cir. 2021), cert. denied sub nom. *Estate of
    Fontana v. ACFB Administracao Judicial*, 142 S. Ct. 1229 (2022) ....... 11

*Kingdomware Techs., Inc. v. United States*,
    136 S. Ct. 1969 (2016)............................................................................. 22

*Krivo Indus. Supply Co. v. Nat'l Distillers and Chemical Corp.*,
    483 F.2d 1098 (5th Cir. 1973) ................................................................. 33

*Mantiply v. Horne (In re Horne)*,
    876 F.3d 1076 (11th Cir. 2017) ............................................................... 21

*Milner v. Department of Navy*,
    562 U. S. 562, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011) .................... 28

*Pa. Dep't of Corr. v. Yeskey*,
    524 U.S. 206, 118 S. Ct. 1952 (1998) ..................................................... 29

*Ritzen Group, Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582, 205 L. Ed. 2d 419 (2020)................................................ 12

*Rotkiske v. Klemm*,
    140 S. Ct. 533 (2019)............................................................................... 22

*Rubin v. United States*,
    449 U. S. 424, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981) ........................ 28

*St. Petersburg Sheraton Corp. v. Stuart*,
    242 So. 2d 185 (Fla. 2d DCA 1971)........................................................ 34

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
    484 U.S. 365, 108 S. Ct. 626 (1988) ................................................. 24, 25

*United States v. Carona*,
    630 F.3d 917 (9th Cir. 2011) ................................................................... 26

*UTSA Apartments L.L.C. v. UTSA Apartments 8, L.L.C. (In re UTSA*
    *Apartments 8, L.L.C.)*,
    886 F.3d 473 (5th Cir. 2018) ................................................................... 32

## State Cases

11 U.S.C. § 103 ........................................................................... passim

11 U.S.C. § 109 ........................................................................... passim

11 U.S.C. § 1501 ................................................................................ 27

11 U.S.C. § 1502 ................................................................................ 22

11 U.S.C. § 1517 ................................................................... 23, 24, 26

11 U.S.C. § 1528 ......................................................................... 25, 26

11 U.S.C. § 541 .................................................................................. 31

28 U.S.C. § 1410 ......................................................................... 26, 27

28 U.S.C. § 1410(2) and (3) ............................................................... 27

28 U.S.C. § 158(d)(1) ......................................................................... 11

## Federal Statutes

11th Circuit Rule 26-1.3(b) .................................................................. 3

## JURISDICTIONAL STATEMENT

This is an appeal of a Final Judgment entered in the United States District Court for the Middle District of Florida, which affirmed an Order entered by the United States Bankruptcy Court for the Middle District of Florida. The Bankruptcy Court entered an Order granting Appellee's Motion for Recognition of a Foreign

Proceeding under Chapter 15 of the United States Bankruptcy Code (11 U.S.C. § 101, et seq., "Bankruptcy Code").

On May 9, 2022, Appellant filed a Response to Jurisdictional Question as requested by the Court (the "Jurisdictional Response"). Appellant adopts by reference the entire Jurisdictional Response as if fully set forth herein. Following the parties Responses to Jurisdictional Question, this Court, via letter from the Clerk, stated "Based upon the responses of the parties, it appears that this court has jurisdiction to consider this appeal."

While a final determination regarding jurisdiction is to be made by the panel to whom this appeal is submitted on the merits, Appellant contends that this Court has jurisdiction, as it does with all appeals from "final decisions, judgments, orders, and decrees" arising from a bankruptcy proceeding. 28 U.S.C. § 158(d)(1); *In re Transbrasil S.A. Linhas Aereas*, 860 Fed. Appx. 163, 166 (11th Cir. 2021), cert. denied sub nom. *Estate of Fontana v. ACFB Administracao Judicial*, 142 S. Ct. 1229 (2022); *Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136 (11th Cir. 2008).

As stated by Supreme Court in *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 205 L. Ed. 2d 419 (2020), "A bankruptcy case embraces an aggregation of individual controversies. Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Id*. at 586. In this Chapter 15 proceeding, the discrete issue finally

11

resolved by the Bankruptcy Court was whether to give recognition to the foreign proceeding.  Accordingly, under the framework of *Ritzen*, the Bankruptcy Court's order is a "final" order subject to appellate review by this Court.

## STATEMENT OF THE ISSUES

1.    Whether 11 U.S.C. § 109(a) applies to cases under Chapter 15 of the Bankruptcy Code.

2.    Whether the District Court and the Bankruptcy Court erred as a matter of law in concluding that 11 U.S.C. § 109(a) does not apply in proceedings commenced under Chapter 15 of the Bankruptcy Code.

## STATEMENT OF THE CASE

### A.    Introduction

Appellant, Talal Qais Abdulmunem Al Zawawi ("Debtor") in this Chapter 15 case seeks reversal of the District Court Judgment and the Bankruptcy Court's Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Related Relief (D.E. 10-21, "Order Granting Recognition") because the District Court and the Bankruptcy Court erred as a matter of law, misapplying 11 U. S. C. § 109(a).

### B.    Course of the Proceedings Below regarding application of Bankruptcy Code § 109(a) to a Chapter 15 Proceeding

On March 24, 2021 ("Petition Date"), Appellees (the "Foreign Representatives"), filed a Chapter 15 Petition for Recognition of a Foreign Proceeding (D.E. 10-6, "Petition") in the United States Bankruptcy Court for the Middle District of Florida, thereby commencing a Chapter 15 case.

In the Petition, the Foreign Representatives alleged that the Debtor was the subject of a "foreign main proceeding" pending in the United Kingdom with respect to the Debtor.  (D.E. 10-6 at 1).  The Foreign Representatives filed a Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Related Relief (D.E. 10-7, "Motion for Recognition"). which was supported by a Declaration of one of the Foreign Representatives, Colin Diss (D.E. 10-8, "Declaration").

14

In the Declaration, Mr. Diss acknowledged that (a) the Debtor is not a citizen of the United States (D.E. 10-8 at 3-4); (b) the Debtor is not a party to any other litigation in the United States (D.E. 10-8 at 7, ¶ 25(c)); (c) the Debtor does not reside in the Middle District of Florida or anywhere else in the United States (D.E. 10-6 at 2); and (d) Mr. Diss has no personal knowledge of any contacts, connections, assets, or property that the Debtor has with the United States or the Middle District of Florida (D.E. 10-8 at 7, ¶ 26). Mr. Diss also acknowledged in the Declaration that he did not have personal knowledge of many of the statements in the Declaration. (D.E. 10-8 at 2, ¶ 2).

The Debtor filed an Objection to Recognition and Motion to Dismiss Chapter 15 Case (D.E. 10-11, "Objection to Recognition"). The gravamen of the Debtor's Objection to Recognition is that the Chapter 15 case should have been dismissed because the requirements of Bankruptcy Code § 109(a) were not satisfied (D.E. 10-11 at 4-5).

## C. Course of the Proceedings Below regarding the Merits of a Bankruptcy Code § 109(a) review

Seeking to rebut the Debtor's position that he has no property in the United States, on April 20, 2021, the Foreign Representatives filed an Amended Declaration of Colin Diss (D.E. 10-12, "Amended Declaration"). In the Amended Declaration, Mr. Diss added a statement asserting that the Debtor has some interest in certain Florida business entities, even though the Foreign Representatives acknowledged

15

that the Debtor himself does not actually hold any membership interest in them: "Debtor holds an interest in the Companies, indirectly, through a Curaçao company called Qapa Investing Corporation N.V., which in turn ostensibly owns some or all of the Companies." (D.E. 10-12 at 7, ¶ 26) (italics omitted) (emphasis added).

The Amended Declaration includes an organizational chart for the Companies (D.E. 10-15), showing that the only entity that the Debtor owns is Qapa Investing Corporation N.V., which is not a United States entity and is not located in the United States. The organizational chart for these entities is undisputed, and it is reproduced below for the Court's convenience:



Based on this organizational chart, the Debtor only owns a partial interest in a Dutch company that is located in Curacao. The Dutch company (not the Debtor)

owns a Florida entity; and that entity, in turn, owns other Florida entities that own real property in Florida.

### D.     Hearing, Final Orders, and Appeals

On April 22, 2021, the Bankruptcy Court held a hearing on whether the Motion for Recognition should be granted.  (D.E. 72).  On May 6, 2021, the Bankruptcy Court entered the Order Granting Recognition.  (D.E. 10-5 at 12).  The Order Granting Recognition was timely appealed.  (D.E. 10-3).  The Bankruptcy Court subsequently entered a Supplemental Memorandum Opinion on Order Granting Recognition of Foreign Main Proceeding (D.E. 11-1, the "Opinion").

The Bankruptcy Court concluded that § 109(a) does not apply in Chapter 15. (D.E. 11-1 at 13).  Notwithstanding this claim, the Bankruptcy Court went on to find that the Debtor would still meet the eligibility requirements of § 109(a) because the Debtor "has property in the United States."  (D.E. 11-1 at 13).  More specifically, the Bankruptcy Court concluded that § 109(a) "is satisfied by maintaining a nominal amount of property in the United States."  (D.E. 11-1 at 13) (citation omitted).  The Bankruptcy Court then found that the Florida Companies "are closely held entities which all own real property in the Middle District of Florida[,]" and that "[t]he interest in these entities can be traced to the Foreign Debtor through other entities." (D.E. 11-1 at 13-14).  "The Foreign Debtor is also listed as a director of these entities,

who list their principal place of business in the Middle District of Florida."  (D.E. 11-1 at 14).

On February 28, 2022, the District Court entered its Memorandum Opinion and Order affirming the Bankruptcy Court.  (D.E. 28, "District Court Opinion"). The District Court concluded that § 109(a) does not apply to Chapter 15 proceedings. The District Court also concluded that the issue whether the Appellees met their burden of showing that the Debtor met the requirements of § 109(a) was moot, because 109(a) did not apply.  Following this Opinion, the District Court entered Judgment for the Appellee.  (D.E. 29, "District Court Judgment").  This appeal timely followed.  (D.E. 30, "Notice of Appeal").

## SUMMARY OF ARGUMENT

The plain text of § 103(a) clearly and unambiguously provides that § 109(a) applies in Chapter 15 bankruptcy proceeding.  Under well-established rules of statutory construction, as set forth in binding Supreme Court and Eleventh Circuit precedent, the clear and unambiguous language of the statute controls.  Because the plain language of § 103(a) makes clear that § 109(a) applies in Chapter 15, that should be the beginning – and the end – of the inquiry.  Accordingly, this Court should hold that § 109(a) applies in Chapter 15, reversing the District Court's decision.

The District Court did not reach the merits of the § 109(a) inquiry.  To the extent that this Court reaches that issue, the Foreign Representatives failed to submit sufficient evidence to establish that § 109(a) has been satisfied in this case.  Other than the "retainer" and the "coat and wallet" that the Foreign Representatives sent to the United States as a contrivance to manufacture jurisdiction under § 109(a), which should be disregarded, the Debtor did not own any property in the United States on the Petition Date, the Foreign Representatives sole basis for attempting to satisfy § 109(a).  For each of these reasons, as detailed in the briefing before this Court, the Bankruptcy Court's Decision should be reversed and remanded with instructions to dismiss the Chapter 15 Petition pursuant to a plain language interpretation of § 109(a) of the Bankruptcy Code.

**ARGUMENT**

**STANDARD OF REVIEW**

The Bankruptcy Court and the District Court determined, as a matter of law, that § 109(a) does not apply to Chapter 15 proceedings.  Since their determinations resolve pure questions of law, the standard of review is *de novo*.  *Mantiply v. Horne (In re Horne)*, 876 F.3d 1076, 1080 (11th Cir. 2017) (citation omitted).

**I.    THE PLAIN LANGUAGE OF BANKRUPTCY CODE § 103(a) REQUIRES SECTION 109(A) TO APPLY IN CHAPTER 15 PROCEEDINGS**

The primary issue presented by this appeal is whether 11 U. S. C. § 109(a) applies to a debtor under Chapter 15 of the bankruptcy code.  A plain reading of the Bankruptcy Code yields a single answer: yes.

Section 103 of the Bankruptcy Code sets forth which sections of Title 11 apply to cases pending under the various chapters of the Bankruptcy Code, whether the case is pending under chapter 7, 11, 12, 13 or 15.  Section 103(a) plainly says that "all of Chapter 1 of the Bankruptcy Code, which includes § 109(a), applies in a case pending under Chapter 15."  11 U.S.C. § 103(a).  Utilizing the textualist approach, the plain language of § 103 resolves this issue conclusively.

Section 109 of the Bankruptcy Code sets forth the requirements for eligibility as a debtor under the various chapters of the Bankruptcy Code.  Pursuant to § 109(a), which is titled "Who may be a debtor," provides a general requirement applicable to

21

debtors under all Chapters of the Bankruptcy code that "only a person that resides or has a domicile, place of business, or property in the United States, or a municipality, may be a debtor under this title [including Chapter 15]." 11 U.S.C. § 109(a) (emphasis added).

Under 11 U.S.C. § 1502(1), in Chapter 15, "'debtor' means an entity that is the subject of a foreign proceeding." Applying the adorned language of these statutes, to be a debtor in Chapter 15, the debtor must reside or have a domicile, place of business, or property in the United States.

When a question of statutory interpretation is presented, the analysis begins with the language of the statute. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). When the language of the statute is clear and unambiguous (as it is in this case), the analysis "ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see also Rotkiske v. Klemm*, 140 S. Ct. 533, 360 (2019) (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

In this case, the plain language of § 103(a) unambiguously provides that § 109 applies in Chapter 15. Section 109(a) sets forth the eligibility requirements "under this title," that is, Title 11 (which is the entire Bankruptcy Code, including Chapter 15). As such, the analysis begins – and ends – with § 103(a). "When the express terms of the statute give us one answer and extratextual considerations suggest

another, it's no contest.  Only the written word is the law, and all persons are entitled

to its benefit."  *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020).

This conclusion is strongly supported by *In re Barnet*, 737 F.3d 238 (2d Cir.

2013), which is the only Circuit Court to address this issue.  In *Barnet*, the Second

Circuit held that a putative debtor under Chapter 15 has to meet the threshold

requirements of § 109(a) because § 103 says that Chapter 1 (including § 109(a))

applies in Chapter 15.  The Second Circuit explained that:

> The straightforward nature of our statutory interpretation bears
> emphasis.  Section 103(a) makes all of Chapter 1 applicable to Chapter
> 15.  Section 109(a)—within Chapter 1—creates a requirement that must
> be met by any debtor.  Chapter 15 governs the recognition of foreign
> proceedings, which are defined as proceedings in which "the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court."  11 U.S.C. § 101(23).  The debtor that is the subject of the
> foreign proceeding, therefore, must meet the requirements of Section
> 109(a) before a bankruptcy court may grant recognition of the foreign
> proceeding.

*Barnet*, 737 F.3d at 247.

Notwithstanding the plain language of the Code, and the fact that the only

circuit to have reviewed that provision did so consistent with that plain language, the

lower courts reached a different result based on implications of other statutory

provisions in Chapter 15.  In particular, the lower courts point to 11 U.S.C. § 1517

and the absence of a requirement in that Section for a putative debtor to satisfy §

109(a) prior to recognition.  (D.E. 11-1 at 8).

23

Section 1517 addresses the issue of what is required for recognition of a foreign proceeding, but it does not address the preliminary, threshold issue of who is *eligible* to be a debtor under Chapter 15. That is addressed in § 109(a) (entitled, "Who may be a debtor"). And the plain language of § 109(a) requires that, to be a debtor in Chapter 15, the subject of the foreign proceeding has to reside, have a domicile, have a place of business, or have property in the United States. The fact that § 109(a) imposes a preliminary, threshold requirement for eligibility to be a debtor under Title 11 in no way conflicts with the requirements for recognition of a foreign proceeding under § 1517. They are different requirements for different purposes, both of which must be satisfied. The lower courts violated the core tenets of applying express terms by disregarding the plain language of § 103(a), which provides, in part, that § 109(a) is applicable in proceedings pending under Chapter 15. *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1737 (2020).

"Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988) (construing the Bankruptcy Code). "Provisions of the [B]ankruptcy [C]ode cannot be read in isolation but should be interpreted in light of the remainder of the statutory scheme." *In re Howard*, 972 F.2d 639, 640 (5th Cir. 1992) (citing *Timbers*). Reading § 109 to apply in Chapter 15 is consistent with the rest of the Bankruptcy Code and Chapter 15, read holistically, and "produces a substantive effect that is

24

compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988).

The lower courts also rely on a clause in 11 U.S.C. § 1528 (providing that "a case under another chapter of this title may be commenced only if the debtor has assets in the United States") stating that it would be rendered superfluous if § 109 applied to recognition. (D.E. 11-1 at 10-11). However, the language of § 109 is different from § 1528, these statutes address different purposes, and the mere fact that these statutes overlap does not render them superfluous. Section 109 addresses eligibility to be a debtor under the Bankruptcy Code (including Chapter 15) and provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title," while § 1528 addresses the requirements for the commencement of a case under Chapter 7, 11, 12, or 13 (presumably for the purpose of actually administering assets here), and it provides that "[a]fter recognition of a foreign main proceeding, a case under another chapter of this title may be commenced only if the debtor has assets in the United States." 11 U.S.C. § 109; 11 U.S.C. § 1528 (emphasis added). The different language ("property" as opposed to "assets") and the different purposes of these statutes (eligibility for Chapter 15 as opposed to commencement of a case under another chapter) demonstrate that applying § 109 in Chapter 15 does not render § 1528 superfluous. For example, a debtor could reside in the United States,

but have no assets in the United States, in which case a foreign proceeding could be recognized under § 109 and § 1517, but the foreign representatives would not then be able to commence a case under another chapter because the "asset" requirement of § 1528 would not be satisfied. As this example clarifies, § 109 and § 1528 operate independently, without conflict, and are not duplicative or superfluous.

In any event, the mere fact that these statutes overlap does not render them superfluous or redundant:

> [T]he cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant . . . does not prevent more than one provision of a statute from applying in a particular instance . . . . When [two laws] only partially overlap, we must construe them in harmony. . . . It should not be surprising that statutes are not necessarily written so that one and only one statute can apply at a time. To the contrary, statutes often contain overlapping provisions. The term 'belt and suspenders' is sometimes used to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered. That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants.

*United States v. Carona*, 630 F.3d 917, 926-27 (9th Cir. 2011) (internal quotation and citation omitted).

Likewise, applying § 109(a) in Chapter 15 (as required by § 103) is entirely consistent with the bankruptcy venue statute for cases ancillary to foreign proceedings, 28 U.S.C. § 1410. A debtor could reside or have a domicile in the United States (as required to be a debtor under § 109(a)), yet lack a place of business

26

or assets in the United States for venue purposes under 28 U.S.C. § 1410.  In such a case, 28 U.S.C. § 1410(2) and (3) are readily harmonized, do not conflict, and are entirely consistent with the statutory scheme.

Moreover, other provisions of Chapter 15 show that Congress intended for § 109(a) to apply in Chapter 15.  The fact that 11 U.S.C. § 1501(c) refers to other subsections of § 109 shows that Congress was fully contingent of § 109 and its effect on Chapter 15, and Congress still chose to incorporate § 109(a)'s requirements into Chapter 15 through § 103(a), and not to exclude them in § 1501(c).  This statutory structure further confirms that Congress intended for § 109(a) to apply in Chapter 15, just like § 103(a) says it does.

Even under a purposivism-based approach, like that advocated by the Foreign Representatives and used by the Bankruptcy Court as support for its conclusion, (D.E. 11-1 at 10), § 109(a) should still apply in Chapter 15.  There would be no purpose to a Chapter 15 case unless the debtor either resides or has a domicile, place of business, or some property in the United States.  Without some such connection to the United States, a Chapter 15 case would be pointless.

Regardless, the Supreme Court has made clear which way the textualism vs. purposivism debate must be resolved, but "none of these contentions about what the [parties] think the law was meant to do, or should do, allow us to ignore the law as it is."  *Bostock*, 140 S. Ct. at 1745.  The High Court continued: "This Court has

27

explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end.  The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* (citing *Carcieri v. Salazar*, 555 U. S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009); *Connecticut Nat. Bank v. Germain*, 503 U. S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992); *Rubin v. United States*, 449 U. S. 424, 430, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981)).

In other words, the perceived purpose of a statute cannot change its plain meaning when the text is clear and unambiguous, as it is here.  "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Bostock*, 140 S. Ct. at 1749 (quoting *Milner v. Department of Navy*, 562 U. S. 562, 574, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011)).  "[L]egislative history can never defeat unambiguous statutory text . . . ." *Bostock*, 140 S. Ct. at 1750.  Here, § 103(a) is unambiguous.

Furthermore, the meaning of a statute does not change just because Congress may not have anticipated a given result.  *Id.* at 1750.  In *Bostock*, the majority took pains to point out the difference between the meaning of statutory language and the result that obtains from applying it.  *Id.*  The Court rejected the argument that the meaning of the statute should change merely because the result was "unexpected," explaining that "is exactly the sort of reasoning this Court has long rejected." *Id.*

28

(citations omitted).  This type of argument "impermissibly seeks to displace the plain meaning of the law in favor of something lying beyond it."  *Id.*

Yet, that is exactly what the Foreign Representatives  urged below leading the lower court to error.  If they remain consistent with their arguments below, they will attempt to convince this Court to displace the plain meaning of §§ 103(a) and 109(a) with something lying beyond, based on what they assert Congress must have intended, notwithstanding the plain language of the statute.  "[I]n the context of an unambiguous statutory text[,]" whether Congress envisioned the result in a specific application "is irrelevant."  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 1955-56 (1998).  "[T]he fact that a statute may be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity.  It demonstrates breadth."  *Id.* (citation omitted).

Accordingly, based on the plain language of the Bankruptcy Code, this Court should apply the clear and unambiguous language of § 103(a) and conclude that § 109(a)  applies in Chapter 15.

## II.    THE DEBTOR HAS NO PROPERTY IN THE UNITED STATES, SO RECOGNITION SHOULD NOT BE GRANTED PURSUANT TO § 109(a) OF THE BANKRUPTCY CODE

The District Court did not reach underlying issues regarding property within the United States and a reversal may occur based solely on the correction of the legal infirmity of that threshold determination below.  To the extent that this Court wishes

29

to further review the alternative filing of the Bankruptcy Court, those issues were erroneously decided and also require reversal. This Court should either remand for further determination, or on the basis of the record hold that the Debtor has no property interests in the United States that satisfies § 109(a).

The sole basis the Foreign Representatives used to attempt to satisfy § 109(a) was an allegation that the Debtor has property in the United States. However, there is no dispute that the Debtor himself has no property or property interests in the United States (other than property transferred here by the Foreign Representatives as part of a contrivance to manufacture jurisdiction under § 109(a)).

To decide the issue, the Bankruptcy Court relied on *In re PT Bakrie Telecom TBK*, 601 B.R. 707, 714 (Bankr. S.D.N.Y. 2019) for the proposition that "[t]he property requirement of § 109(a) is satisfied by maintaining a nominal amount of property in the United States." (D.E. 11-1 at 13). Even if a "nominal" amount of property were sufficient to satisfy § 109 (a proposition that the Debtor in this case disputes), the property still must be property of the Debtor. As argued below, the property interests in Florida (on which the Foreign Representatives rely) are owned by other, separate business entities that are different, separate legal persons under applicable law. Property interests owned by separate legal persons cannot satisfy the requirement in § 109(a) that the Debtor own property in the United States, at least not without piercing the corporate veil.

30

Moreover, the word "nominal" does not appear in § 109. A rule that "nominal" property is sufficient to satisfy § 109(a) would inappropriately add a qualifier into the statutory language that would suggest that charades of gamesmanship, like that in which the Foreign Representatives engaged in this case, sending their own property to the United States and then urging that it belongs to the Debtor, is not what § 109(a) provides and cannot be what Congress intended. The plain language of § 109(a) (in relevant part) requires the *debtor* to have property in the United States. 11 U.S.C. 109 (emphasis added). Based on the plain language, to satisfy § 109, the putative debtor must have some actual property interest in the United States, and even if that property is minimal, it must still actually belong to the debtor. *See, e.g., In re Head*, 223 B.R. 648, 651-52 (Bankr. W.D.N.Y. 1998) (rejecting efforts to manufacture a property interest to satisfy § 109(a) as "too tenuous, too inchoate, and too contrived").

Similarly, any reliance on 11 U.S.C. § 541 is misplaced. Section 103 (which sets forth the applicability of chapters of the Bankruptcy Code) clearly provides that § 541 does not apply in Chapter 15. *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2018 Bankr. LEXIS 504, at *5 (Bankr. D.N.J. Feb. 23, 2018). Nevertheless, even using § 541 to define the nature of a property interest that could satisfy § 109, the plain language of § 109 requires that that property interest still must be property of

31

the Debtor, not the property of a separate, third-party business entity (such as the Florida business entities in this case).

For the reasons set forth in more detail below, the Foreign Representatives have not proven a property interest of the Debtor in the United States sufficient to satisfy § 109(a).

## A.     The Debtor has No Interest in Florida Entities

First, Foreign Representatives argued below that the Debtor held an "indirect" property interest in the United States through a series of corporate entities. However, this argument must fail because it misapplies applicable corporation law and property law.

Property interests in bankruptcy are defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979) (stating that "[p]roperty interests are created and defined by state law"); *see also UTSA Apartments L.L.C. v. UTSA Apartments 8, L.L.C. (In re UTSA Apartments 8, L.L.C.)*, 886 F.3d 473, 487 (5th Cir. 2018) (citing and relying on *Butner*).

In this case, the Debtor only owns a fractional interest in a Dutch company. (D.E. 11 at 2). The Dutch company (not the Debtor) owns a Florida company. That Florida company (not the Debtor) owns three other Florida companies. Those three other Florida companies (not the Debtor) own real estate in Florida. The Debtor himself owns nothing in Florida or in the United States. (D.E. 11 at 2-3). The

Foreign Representatives' argument fails to appreciate that separate business entities are separate legal persons with separate property.

Fundamental principles of basic corporation law make clear that corporate entities must be treated as separate legal persons, with separate property, and the corporate form cannot be disregarded without proof that it has been abused. *See Krivo Indus. Supply Co. v. Nat'l Distillers and Chemical Corp.*, 483 F.2d 1098, 1102 (5th Cir. 1973) (explaining that "[b]asic to the theory of corporation law is the concept that a corporation is a separate entity, a legal being having an existence separate and distinct from that of its owners[,]" and that "[t]he corporate form . . . is not lightly disregarded . . .").

Florida follows this black letter law. As explained by one of its appellate courts: "A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).

Florida law also requires that corporations must be treated as separate legal persons, unless the "corporate veil" is pierced, which requires proof of fraud, wrongdoing, or abuse of the corporate form. *See Beltran v. Miraglia,* 125 So. 3d 855, 858 (Fla. 4th DCA 2013). Importantly, the Foreign Representatives made no attempt (or even alleged grounds) to pierce the corporate veil before the lower courts.

"Ownership by one corporation of all the stock of another corporation does not destroy the identity of the latter as a distinct legal entity; nor does the fact that the stockholders or officers in two corporations are the same persons operate to destroy the legal identity of either corporation." *St. Petersburg Sheraton Corp. v. Stuart*, 242 So. 2d 185, 190 (Fla. 2d DCA 1971) (citing 18 Am. Jur. 2d, Corporations, § 17; 18 C.J.S. Corporations § 5, pp. 374, 375; 7 Fla. Jur., Corporations, §§ 31-38).

The Foreign Representatives brushed aside these basic concepts of business entities and eschewed applicable corporation and property law merely because this is a Chapter 15 case. This Court should disagree. The Debtor and the other owners of the business entity in Caracaos structured their property and affairs based on these long-held, well-established business and property law principles. It would be patently unfair and inequitable to disregard these long-established principles of corporation law. People are entitled to be able to rely on basic, fundamental, long-standing corporation law concepts to structure their business and affairs. They should not have those well founded expectations upended and disregarded merely because a Chapter 15 case is filed. It is the Florida entities (not the Debtor) that own the property interests in Florida.

If the Foreign Representatives wanted a judicial determination that the property interests of the Florida entities should be deemed to be property of the Debtor, there was a way for them to do that: they could have pleaded a claim to

34

pierce the corporate veil. Of course, that would have required proof of fraud or abuse of the corporate form. *See Beltran,* 125 So. 3d at 858. Importantly in the instant case, the Foreign Representatives have not alleged abuse of the corporate form, fraud, alter ego, or any other basis to assert that the corporate veil should be pierced. The record evidence before the lower courts demonstrate that the corporate entities are separate entities, and there has been no allegation that the corporate form was misused or that the corporate veil should be pierced. Accordingly, the Florida business entities must be treated as separate and distinct legal entities, and their respective property interests must be treated as separate from the Debtor's.

The Foreign Representatives have conceded as much to the court below, arguing: "[s]o while **admittedly the Debtor does not directly own the interest in the Florida corporations**, he owns an interest through -- to and through the Netherlands Curacao company, the Qapa Curacao company and the Qapa Holdings Company, which is a Florida corporation, and then it in turn owns a hundred percent of each of the three subsidiaries." (D.E. 72 at 14:3-8) (emphasis added). As the Foreign Representatives acknowledge, the property interests of the separate business entities are not owned by the Debtor entities.

In this case, the Foreign Representatives can obtain all relief to which they are entitled by pursuing their remedies against the Dutch corporation in Caracaos (the only one of these entities that the Debtor does actually own, even if fractionally) and

pursuing their remedies through that entity, as permitted by applicable law. In fact, the Foreign Representatives are well on their way to achieving this end, as they have already obtained an attachment order against the Debtor's shares in Qapa Investing Corporation, N.V. (D.E. 10-8 at 7, ¶ 27). If the Foreign Representatives want to levy on the Debtor's indirect interests in these various business entities, they have all the means at their disposal to do so within the confines of applicable law. But the Foreign Representatives should not be able to disregard and ignore the corporate form merely because this is a Chapter 15 case.

### B.     The Debtor Does Not Own Texas Q Zone, Inc. or any Chose in Action or Cause of Action Arising Therefrom.

Second, it was undisputed below that the Debtor sold his interest in Texas Q Zone, Inc. prior to the Petition Date. (D.E. 10-12 at 7, ¶ 26(a)). The relevant time period to determine a debtor's property interests for purposes of § 109 eligibility is the petition date. *Cf. Flynn v. Wallace (In re Irish Bank Resolution Corp. (In Special Liquidation))*, 538 B.R. 692, 696-97 (D. Del. 2015) (explaining that the "plain language of the statute clearly indicates that the relevant time period to consider is the date of the fling of the Chapter 15 petition, not the debtor's entire operational history" for purposes of § 109(b)). Since the Debtor did not own any interest in Texas Q Zone, Inc. on the Petition Date, it cannot satisfy § 109(a).

36

Nevertheless, the Foreign Representatives intimated to the lower courts that they may have some kind of chose in action or potential cause of action, without alleging in any detail whatsoever what, exactly, it might be. This inchoate claim, whatever it might be, would not belong to the Debtor; it would belong to the bankruptcy estate in the U.K. bankruptcy proceeding. Vaguely speculating that there might be some potential cause of action held by the bankruptcy estate in the U.K. bankruptcy proceeding against a transferee who is not alleged to be in the United States does not constitute a property interest of the Debtor, does not constitute property in the United States, and does not satisfy § 109(a). *See In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2018 Bankr. LEXIS 504, at *6-12 (Bankr. D.N.J. Feb. 23, 2018) (explaining that fraudulent transfer claims belong to the foreign representatives or liquidators, not the debtor or individual creditors).

## C.    The Foreign Representatives' Attempts to Manufacture a Sham Property Interest for Purposes of § 109(a) Should be Rejected .

Third, the Foreign Representatives have attempted to satisfy § 109(a) by manufacturing a contrived property interest without the Debtor's knowledge, authorization, or consent. The Foreign Representatives did this by sending $2,500 to their attorney in Florida, and then asking their attorney to hold it in trust *on behalf of the Debtor*. If this were a permissible means of satisfying § 109(a), that section would be rendered a nullity. The Foreign Representatives then "doubled down" on this effort to create a property interest, sending what they purport to be the Debtor's

37

coat and wallet to their attorney in Florida for "safekeeping," again for the purpose of manufacturing a pretextual basis to satisfy § 109(a). The Court should not give credence to a sham basis for establishing a "property interest."

Courts have rejected veiled attempts to circumvent the legitimate statutory requirements of § 109 and Chapter 15. *E.g., Head*, 223 B.R. at 652 (rejecting an attempt by foreign persons to manufacture bankruptcy jurisdiction in the United States under § 109 by asserting a property interest that was "too tenuous, too inchoate, and too contrived"). The sham basis for attempting to manufacture Chapter 15 jurisdiction in this case would create a dangerous precedent and would likely disrupt international comity if accepted.

Moreover, the money that is being held in trust is not the Debtor's money. It is the Foreign Representatives' money, which they asked their attorneys to hold on behalf of the Debtor (an adverse party). In these cases where courts have found retainers to constitute sufficient property to satisfy § 109(a), it was actually the debtor's money, and it was the debtor that caused the money to be transferred to the United States, where it was held in trust by the debtor's counsel. This case is readily distinguished because it is not the Debtor's money, the Debtor did not transfer it to the United States, and it is not being held by Debtor's attorney. These are important factual differences that distinguish this case from cases argued below, finding a

retainer in a trust account in the United States is sufficient to satisfy 11 U.S.C. § 109(a).

The recognition of a foreign proceeding has serious and far-ranging consequences, including the power to "operate the debtor's business." 11 U.S.C. § 1521(a)(3). This is no small thing, and if the Foreign Representatives' interpretation of § 109(a) and Chapter 15 were accepted, coupled with their view of the minimal, "indirect" property interests that would be sufficient to satisfy § 109(a), United States businesses could end up finding themselves being operated by a foreign representative merely because a fractional owner is a debtor in a foreign proceeding. Ruling in favor of the Foreign Representatives could result in a danger that Foreign Representatives would be able to use Chapter 15 to meddle or interfere with the operation of United States businesses, even if the putative debtor does not actually have any property here. That is contrary to the plain language of §§ 103(a) and 109(a), inconsistent with what Congress intended, and must be rejected. To the extent this Court addresses the 109(a) issue on the merits, the orders below must be reversed on that further basis.

## CONCLUSION

For each of the foregoing reasons, Appellant, Talal Qais Abdulmunem Al Zawawi, respectfully requests this Court to apply the plain language of §§ 103 and 109 of the Bankruptcy Code to determine that § 109(a) applies to a Chapter 15 proceeding, to reverse the lower court's decision accordingly, and to remand with instructions that the Appellant's Motion to Dismiss should be granted.

## CERTIFICATE OF COMPLIANCE

**1.**  **Type-Volume**

This document complies with the word limit of FRAP because, excluding the parts of the document exempted by FRAP 32(f), this document contains 6,164 words.

2.  **Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this July 12, 2022, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System, which will send

notice of electronic filing to all attorneys of record.

Respectfully submitted by:

/s/ Nicholas A. Shannin
NICHOLAS A. SHANNIN, B.C.S
Florida Bar No.:  0009570
Email:  service@shanninlaw.com
          nshannin@shanninlaw.com
SHANNIN LAW FIRM, P.A.
214 South Lucerne Circle East, Suite 200
Orlando, Florida 32801
Telephone:  (407) 985-2222

and

KENNETH D. (CHIP) HERRON, JR.
Florida Bar. No. 699403
HERRON HILL LAW GROUP, PLLC
P.O. Box 2127
Orlando, FL 32802
Telephone:  (407) 648-0058
Email:  chip@herronhilllaw.com
       lauren@herronhilllaw.com

*Counsel for Appellant, Talal Qais
Abdulmunem Al Zawawi*